UNITED STATES DISTRICT COURT
EASTERN DISTCT OF MICHIGAN
SOUTHERN DIVISION

SHERRY W.[1],

                Plaintiff,          Civil Action No.: 24-12278

v.                            David R. Grand[2]
                            United States Magistrate Judge

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)

Sherry W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions and consented to the undersigned as presider pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 9).

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 9).

Act.   Accordingly, the Court will **GRANT** the Commissioner's Motion for Summary Judgment **(ECF No. 12), DENY** the Plaintiff's Motion for Summary Judgment **(ECF No. 10)**, and pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRM** the ALJ's decision.

### I.      Background

Plaintiff was 51 years old on her alleged onset date of December 1, 2019, and at 5'11" tall, weighed between 165 and 280 pounds during the relevant period.  (PageID.679, 280, 375, 399, 896, 922).[3]  She completed two years of college.  (PageID.281).  She now alleges disability resulting from "COPD, fall risk, unsteady balance – uses a walker, unable to stand for more than 10 minutes, numbness in feet when walking/standing too long, hypertension, depression, chronic cough, pain in chest."  (PageID.280) (cleaned up).

After Plaintiff's applications for SSI and DIB were denied at the initial level on April 26, 2021, and on reconsideration on January 7, 2022 (PageID.110, 112, 114, 133), she timely requested an administrative hearing, which was held on June 6, 2023, before ALJ Sarah Smisek.  (PageID.54, 183).  Plaintiff, who was represented by attorney Patrick Cahill, testified at the hearing, as did vocational expert ("VE") Michele Robb. (PageID.54).  In a written decision dated July 21, 2023, the ALJ found that Plaintiff is not disabled under the Act.  (PageID.39-48).  On July 10, 2024, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review.  (PageID.23).  Plaintiff filed for judicial review of the final decision on September 3, 2024. (ECF No. 1).

---

[3] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 7-1.

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, disability reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## II.      The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI and DIB is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).   "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."   *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ found that Plaintiff was not disabled under the Act.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 1, 2019, the alleged onset date.  (PageID.41). At Step Two, the ALJ found that Plaintiff has the following severe impairments: "chronic obstructive pulmonary disease (COPD), alcoholic neuropathy, and obesity." (*Id.*).  At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (PageID.43).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding,

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant must use a cane for support, balance, and ambulation. Never climb ladders, ropes, or scaffolds. Occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme cold, extreme heat, humidity,

fumes, odors, dust, gases, and poor ventilation. The claimant must avoid all exposure to hazards including moving machinery and unprotected heights but does not need to avoid ordinary hazards such as open doors, boxes on the floor, and approaching people.

(PageID.44-47).

At Step Four, the ALJ determined that Plaintiff is "capable of performing past relevant work as a shipping clerk as actually performed." (PageID.47). As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (PageID.48).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## III.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t]

5

evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

## IV. Analysis

In her motion for summary judgment, Plaintiff argues that "[t]he ALJ's

determination is unsupported by substantial evidence as she failed to properly consider the opinion evidence," including that of her treating physician, Anshe Wadehra, M.D., and State Agency medical consultant, Loren Levy, M.D.  (ECF No. 10, PageID.1019-25).  She also argues that "[t]he ALJ's determination is unsupported by substantial evidence as she failed to properly consider [Plaintiff's] mental impairments."  (*Id.*, PageID.1025-29).  The Court addresses these arguments in turn.

### A.      The ALJ Did Not Err in Her Evaluation of the Medical Opinions

#### i.      The ALJ's Evaluation of Dr. Wadehra's Opinion is Supported by Substantial Evidence

Plaintiff argues that the ALJ "improperly rejected the opinion of treating medical source Anshe Wadehra, M.D.," which she found unpersuasive.  (ECF No. 10, PageID.1020).  Specifically, Plaintiff argues that the ALJ's conclusions regarding the supportability and consistency of Dr. Anshe Wadehra's ("Dr. Wadehra") opinion are "unfounded."  (*Id.*).

Under the revised regulations applicable to claims, like Plaintiff's, filed on or after March 27, 2017, ALJs must evaluate the persuasiveness of medical opinions and "explain how [they] considered the supportability and consistency" of such opinions – the two "most important" factors – in their decision.  20 C.F.R. §§ 404.1520c(b)(2).[4]  As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ...

---

[4] 20 C.F.R 416.920c(b)(2) is identical to 20 C.F.R. § 404.1520c(b)(2).  The former applies to Disability Insurance Benefits and the later applies to Supplemental Security Income.  Plaintiff has applied for both.

the more persuasive the medical opinions ... will be."  20 C.F.R. §§ 404.1520c(c)(1).  As to the second factor (consistency), "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be."  20 C.F.R. §§ 404.1520c(c)(2).  "The regulations require that the ALJ sufficiently articulate his reasoning for his persuasiveness findings." *Mistie W. v. Comm'r of Soc. Sec.*, No. 23-10696, 2024 WL 992160, at *3 (E.D. Mich. Mar. 7, 2024) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 902 (E.D. Mich. 2021)).  In this case, the Court finds that the ALJ reasonably evaluated the supportability and consistency of Dr. Wadehra's opinion, and that substantial evidence supports her conclusion that Dr. Wadehra's opinion is unpersuasive.

Dr. Wadehra is Plaintiff's treating physician and provided the ALJ with a medical source statement regarding Plaintiff's physical capacity from January 29, 2021. (PageID.667-70).  The statement is in checkbox and short fill-in-the-blank format, and the only significant amount of writing is on the first page of the opinion as follows:

8

2. Diagnoses: Hypertension, COPD, Depression, Generalized Ataxia

3. Prognosis: Poor

4. List your patient's *symptoms*, including pain, dizziness, fatigue, etc:

Fatigue, balance difficulties, frequent falls.

5. If your patient has pain, characterize the nature, location, frequency, precipitating factors, and severity of your patient's pain:

Right Shoulder pain  8/10 severity.

6. Identify the clinical findings and objective signs:

Ataxia with walking, positive Romberg test

7. Describe the treatment and response including any side effects of medication that may have implications for working, e.g., drowsiness, dizziness, nausea, etc:

N/A

(PageID.667).

Dr. Wadehra completed the rest of the assessment using checkboxes and single-word fill-in-the-blanks, indicating that Plaintiff has "[d]epression" and "[a]nxiety," which are "[p]sychological factors affecting [her] physical condition." (PageID.668). Dr. Wadehra marked that Plaintiff is likely to be "off task" 25% or more of the day, is "incapable of even low stress jobs," and can walk "0" city blocks "without rest or severe pain." (*Id.*). In a "competitive work situation," Dr. Wadehra indicated that Plaintiff could stand "0" minutes "before needing to sit down, walk around, etc." and can only sit for 15 minutes "before needing to get up, etc." (*Id.*). Accordingly, Dr. Wadehra marked that Plaintiff would "need to include periods of walking around during an 8-hour workday," but she did not specify how "often must your patient walk" or how "long must your patient

9

walk each time." (*Id.*).  Likewise, Dr. Wadehra indicated that Plaintiff would need a job that "permits shifting positions *at will* from sitting, standing, or walking," and would need to "frequently" "take unscheduled breaks during an 8-hour working day" for, "on average," 30 minutes.  (PageID.669) (emphasis in original).  Dr. Wadehra found that Plaintiff's legs should be elevated with "prolonged sitting," but did not select how "high should the leg(s) be elevated" or for "what percentage of time during an 8 hour working day should the leg(s) be elevated."  (*Id.*).  Dr. Wadehra indicated that Plaintiff could never lift "[l]ess than 10 lbs.," and "never" "twist, stoop (bend), crouch/squat, climb ladders, [or] climb stairs." (PageID.670).  Dr. Wadehra marked that Plaintiff could never "use hands/fingers/arms" to "grasp, turn, twist objects" or to reach overhead.  (*Id.*).  Finally, Dr. Wadehra indicated that Plaintiff's "impairments [are] likely to produce 'good days' and 'bad days,'" which would cause Plaintiff to miss work on "average" "more than four days per month."  (*Id.*).

The ALJ found Dr. Wadehra's opinion "not persuasive," stating:

> The opinion of the claimant's own provider was not persuasive. Anshu Wadehra, MD, completed paperwork indicating the claimant was unable to work at the time due to imbalance and gait ataxia [] This is not supported or consistent with the evidence. The claimant was subsequently referred to physical therapy and within one month was no longer needing a cane. [] The most recent treatment notes also indicate the claimant ambulates normally without mention of any assistive device. [] Depression was also considered to result in extreme limitations, but this is inconsistent with her testimony and a longitudinal review of the records. []. Lastly, the undersigned acknowledges this provider only examined the claimant on a few occasions and there was no follow-up with this provider after February 2021.

(PageID.47) (internal citations omitted).

Based on the above, Plaintiff contends that the ALJ failed to properly evaluate Dr.

10

Wadehra's opinion, but the Court finds no reversible error in this regard.

The Court agrees with the ALJ that Dr. Wadehra's statement "indicating the claimant was unable to work at the time due to imbalance and gait ataxia… is not supported or consistent with the evidence." (PageID.47). First, as to supportability, the ALJ wrote that "[t]he most recent treatment notes [] indicate the claimant ambulates normally without mention of an assistive device." (*Id.*). Although Plaintiff objects that "treatment records from University Health Center, where Dr. Wadehra practices, consistently show use of an assistive device," and references exams in April and May of 2020, the ALJ cited numerous treatment records from Dr. Wadehra's practice in June, July, September, October, and November of 2022, and in January and March of 2023, which support the ALJ's conclusion. (PageID.47, citing PageID.884, 890, 896, 902, 907, 919-20, 924-25) (noting that Plaintiff reported "no muscle aches, no muscle weakness, no arthralgias/joint pain, and no back pain," and "no weakness, no numbness," and finding that she had a "normal gait and station," was "ambulating normally," and had "normal movement of all extremities.").[5] Therefore, substantial evidence supports the ALJ's conclusion that Dr. Wadehra's limitations based on imbalance and gait ataxia is not supported by the evidence.

As to the consistency of Dr. Wadehra's conclusions based on "imbalance and gait ataxia," the ALJ noted that "[t]he claimant was subsequently referred to physical therapy and within one month was no longer needing a cane." (PageID.47). Substantial evidence

---

[5] The Court notes that in June and July of 2022, the examining physician did not complete the "Musculoskeletal" portion of the review and therefore did not make findings about Plaintiff's extremity movement." (PageID.919-20, 924-25).

11

supports the ALJ's conclusion that physical therapy dramatically improved Plaintiff's ability to walk and maneuver.  Plaintiff began physical therapy on September 8, 2021, and was discharged on October 12, 2021.  (PageID.773, 775).  On the discharge summary, the treating clinician, Physical Therapist David Szczesny ("Szczesny"), wrote, "[Patient] reports no pain coming into today's session and regularly performing her [home exercise program] with no difficulty.  She reports ascending and descending stairs with reciprocal pattern and no railing over the weekend."  (PageID.772).  In the "PT Plan of Care Re-Evaluation," conducted on October 7, 2021, Szczensy added that "[Patient] reports 75% improvement in function since initial evaluation.  She reports going grocery shopping by herself without using her cane and starting to forget her cane because she feels so stable." (*Id.*).  He also found that she can "Sit To/From Stand" "with no difficulty," "quickly and safely," climb stairs without an assistive device, as long as there is a railing, and walk independently without an assistive device for 100 feet. (PageID.775-75).   Plaintiff's significant improvement in her ability to walk without an assistive device, sit and stand, and climb stairs substantially supports the ALJ's conclusion that Dr. Wadehra's opinion of Plaintiff's ability to walk, sit, and stand is not consistent with the record evidence.

Next, the ALJ found that in Dr. Wadehra's opinion, "[d]epression was also considered to result in extreme limitations, but this is inconsistent with her testimony and a longitudinal review of the records."  (PageID.47).  The Court finds this conclusion is also supported by substantial evidence.  First, the hearing testimony offers substantial evidence to support that Plaintiff's depression is not consistent with Dr. Wadehra's opined extreme limitations, including that Plaintiff was "[i]ncapable of even low stress jobs" and would be

12

off task "25% or more" of a typical workday." (PageID.68, 668). The key portion of the

hearing transcript, referenced by both Plaintiff and Defendant, is as follows:

> Q: [by Plaintiff's attorney] We talked a little bit about some of these physical problems that you've been having, do you also feel that there's like mental health components that limits you in being able to work full time?
>
> A: No, my mental state is okay, I may not -- I'm not any different from anybody else, I have my days, I want to help myself, but I do get depressed. That I do. I do know [sic] not want to take my life, no. But I do get depressed. And they put me on depression medication, I'm glad for that, and I started doing Yoga and I have seen mentally, and I do that right here in my home. And I just lay on a mat, it's nothing -- nothing that I got to stand and how and do all that, I just lay right here in my home, my son puts the YouTube on, and I just lay here and take my time and breathe. There's no (claimant crying). I'm sorry. It's so hard for me. I'm sorry.
>
> Q Are you okay, ma'am, I mean we can take a minute here –
>
> A Yeah, I'm fine. Yeah, I'm okay.

(PageID.68).

Thus, while the hearing transcript reflects Plaintiff becoming emotional and noting

that she "do[es] get depressed," it also reflects Plaintiff taking medication, working on

improving herself through yoga, and, most significantly, saying that her "mental state is

okay" and does not limit her ability to engage in full-time work, which supports the ALJ's

analysis. (*Id.*). *See Cutlip*, 25 F.3d at 286.

Next, the ALJ reasonably found that a "longitudinal review of the records" is not

consistent with Dr. Wadehra's opined limitations based on Plaintiff's depression.

Although the ALJ should have cited specific portions of the record, her prior discussion of

the historical records regarding Plaintiff's depression is clear and provides adequate

13

support for this finding. Indeed, earlier in the decision, the ALJ similarly noted Plaintiff's "testimony indicating she was okay and was no different than anyone else" and her "[m]ental status examinations [which] revealed no persisting psychological abnormalities" were "consistent with a longitudinal review of the evidence indicating the claimant's psychological impairments have reduced in severity," and the ALJ cited various records in support of that similar consistency finding. (PageID.43, citing PageID.714, 884 ("She reports no depression and no sleep disturbances. She reports no fatigue.")).

For example, as part of the Step Two analysis, the ALJ noted that "[a]lthough the claimant was assessed to have depression and anxiety early on during treatment, it was subsequently described as asymptomatic." (PageID.42-43; PageID.678 (12/13/19 record noting "No Depression or anxiety); PageID.685 (12/20/19 record noting same); PageID.713 (9/15/20 record noting "She denies . . . panic attacks, anxiety, or depression")). Indeed, in September of 2020, Dr. Shukla reported that Plaintiff's anxiety was "asymptomatic" and that Plaintiff "[r]eports having drastic improvement since [she] improved compliance with Celexa 20 mg." (PageID.43, citing PageID.714[6]). The ALJ pointed to several examinations where Plaintiff was "cooperative with appropriate mood and affect." (PageID.42, citing PageID.682, 711, 755). The ALJ also noted that Plaintiff "had excellent mood over the holidays and was looking forward to the future.")

---

[6] In her discussion of Plaintiff's ability to adapt and manager herself, the ALJ references "Exhibit 5F/4." (PageID.43). This appears to be a mistake as that page is merely an authorization. (PageID.675). The ALJ appears to have intended to reference Exhibit 5F/43, which has the "asymptomatic" and "drastic improvement" notations. (PageID.714). Moreover, later on the same page of her decision, where the ALJ references "a longitudinal review" of Plaintiff's mental impairments, she does reference Exhibit "5F/43." (PageID.43).

(PageID.43, citing PageID.890 ("She reports excellent mood over the holidays and is looking forward to her daughter moving closer to home as well as new grandchild. . . . She reports no depression and no sleep disturbances.  She reports no fatigue.")).

For all of the foregoing reasons, the ALJ's analysis of Dr. Wadehra's opinion is supported by substantial evidence.[7]

> ii.     *The ALJ Did Not Commit Reversible Error in Her Handling of Dr. Levy's Opinion*

Plaintiff objects that the ALJ "failed to account for all limitations from the State Agency Medical consultant opinion," which she found "somewhat persuasive."  (ECF No. 10, PageID.1023, citing PageID.46).  Specifically, Plaintiff argues that Dr. Levy's opinion that she could "only frequently reach overhead bilaterally" should have been adopted or the ALJ should have explained her decision not to adopt that limitation.  (*Id.*).[8]  Plaintiff avers that if Dr. Levy's restriction had been adopted, she would have been not have been able to perform her past relevant work, which "would allow her [to] GRID out," given her

---

[7] Plaintiff also objects that "the ALJ's conclusion that Dr. Wadehra only 'examined [Plaintiff] on a few occasions' is not supported by the record.  (ECF No. 10, PageID.1021, citing PageID.667).  Even if this is true, it is immaterial, since the ALJ properly evaluated Dr. Wadehra's opinion using the necessary supportability and consistency factors, and is not required to consider the provider's "[r]elationship with the claimant" in determining the persuasiveness of medical source opinions.  20 C.F.R. § 404.1520c(b)(2).  In addition, the only evidence Plaintiff offers in support of more frequent visits with Dr. Wadehra is that the doctor wrote in her medical source statement that their "[f]requency and length of contact" was "[w]eekly and 2 years."  (PageID.667).  However, Plaintiff cites no treatment records authored by Dr. Wadehra, and the medical record does not support that many visits with Dr. Wadehra as the providing physician.

[8] Both parties agree that Dr. Levy limited Plaintiff to "frequently" reaching overhead.  (ECF No. 10, PageID.123, citing PageID.119-20; ECF No. 12, PageID.1046, citing PageID.120).  As the Commissioner also notes, Dr. Levy imposed "no limitation in [Plaintiff's] ability to reach in front and/or laterally," and thus, as to that particular finding, the ALJ could not have erred by not including such a limitation in Plaintiff's RFC.  (ECF No. 12, PageID.1046).

age.  (ECF No. 10, PageID.1023).  This argument lacks merit.

As Plaintiff states,

> Dr. Levy opined that [Plaintiff] could only **frequently reach overhead bilaterally**. [] [Plaintiff's] **past relevant work** of shipping clerk (DOT#219.367-030) **requires frequent reaching**.  Thus, if properly considered, [Plaintiff] would not be able to perform her past relevant work.

(ECF No. 10, PageID.1025) (internal citations omitted) (emphasis added).

As the Commissioner aptly explained, any error in this regard by the ALJ is harmless.  Even if the ALJ had adopted Dr. Levy's overhead reaching restriction, Plaintiff would still have been able to perform her past relevant work because Dr. Levy found that Plaintiff could frequently reach overhead bilaterally and her past relevant work requires frequent reaching.  (*Id.*; ECF No. 12, PageID.1046 (citing DOT 219.367-030)).

### B.      The ALJ Did Not Commit Reversible Error in Her Consideration of Plaintiff's Mental Impairments in the RFC

Plaintiff objects that, despite the ALJ's analysis of her nonsevere mental impairments at Step Two, the ALJ failed to assess Plaintiff's "mental impairments of anxiety and depression" in determining the RFC.  (ECF No. 10, PageID.1025).  The Court finds no reversible error in this regard.

As the ALJ noted, in determining the RFC, she "must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p)."  (PageID.41).  However, the ALJ does not have to "expressly articulate at Step 4 why [s]he has assessed no limitations for an impairment found to be nonsevere at Step 2."  *Rachael G. v. Comm'r of Soc. Sec.*, No. 3:23-CV-115,

16

2024 WL 2847182, at *6 (S.D. Ohio June 5, 2024).  Rather, in *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020), the Sixth Circuit held that "[t]he ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis, fully support our conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p."  The *Emard* court also noted that the ALJ "stated that she had carefully considered the entire record and 'all symptoms' at [Step 4] in the process."  *Emard*, 953 F.3d at 851.  Accordingly, the Court evaluates whether the ALJ included in her opinion "(1) an express reference to SSR 96-8p; (2) a discussion of the functional limitations imposed by [the plaintiff's] nonsevere impairments at step two of [the] analysis; and (3) a subsequent assurance that [the ALJ] had considered the entire record and all symptoms." *Gregory M., v. Comm'r of Soc. Sec.*, No. 2:25-CV-01028, 2026 WL 850489, at *5 (S.D. Ohio Mar. 27, 2026), (internal citation and quotation omitted).  All three requirements are satisfied here.

First, early in her decision the ALJ recognized that in determining the RFC, she "must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; **SSR 96-8p**)."  (PageID.41) (emphasis added).  Second, the ALJ performed a thorough Step Two analysis of Plaintiff's mental health limitations, ultimately finding that they were not severe, and, importantly, that they did not limit her functional capacity.  (PageID.41-43 (finding "no limitation" in any of the four "functional areas" of "understanding, remembering, or applying information," "interacting with others," "concentrating, persisting, or maintain pace," or

17

"adapting and managing oneself."")).[9]  In making those findings, the ALJ cited significant evidence, including Plaintiff's self-report in which she indicated that she did not have issues with memory, completing tasks, concentration, understanding, following instructions, or getting along with others, and examinations during which she "denied memory loss and memory was normal upon formal examination."  (PageID.42, citing PageID.332, 376, 952, 969).  The ALJ also cited the evidence the Court discussed above, *see supra* at 13-15, including Plaintiff's testimony that her mental state was "okay" and records reflecting that her depression was "asymptomatic," she had demonstrated "drastic improvement" with medication compliance, was cooperative with appropriate mood and affect at examinations, and had "excellent mood over the holidays."  (PageID.42-43). Finally, in her RFC discussion the ALJ wrote that she gave "careful consideration" to "the entire record" and considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (PageID.44).  Thus, particularly where the ALJ found that Plaintiff experienced "no limitation" in any of the four "mental function" areas, she satisfied all the requirements for considering Plaintiff's nonsevere impairments in formulating the RFC, and remand as to this issue is not warranted.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

---

[9] Plaintiff has not challenged any of these findings by the ALJ.

Accordingly, that decision will be affirmed.

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's Motion for Summary Judgment **(ECF No. 12)** is **GRANTED**, Plaintiff's Motion for Summary Judgment **(ECF No. 10)** is **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is **AFFIRMED**.

Dated: March 31, 2026                          s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2026.

s/Julie Owens
JULIE OWENS
Case Manager